The STATE of Ohio, Appellee,

v.

EVANS, Appellant.

[Cite as *State v. Evans*, 153 Ohio App.3d 226, 2003-Ohio-3475.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 02 JE 11.

Decided June 27, 2003.

228

Thomas Hampton, Special Prosecutor, for appellee.

Shawn M. Blake, for appellant.

DeGenaro, Judge.

{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Defendant-appellant, Ronnie Evans, appeals from the judgment of the Jefferson County Court of Common Pleas, which found him guilty of two felonies, ordered that those sentences be served consecutively, found him guilty of five misdemeanors, and ordered that those be served concurrently with the felony sentences. The five issues we must resolve are whether (1) the trial court should have appointed an expert witness for Evans at the state's expense, (2) Evans's right to confront the witnesses against him was violated, (3) Evans was denied the effective assistance of counsel, (4) the trial court erred by failing to instruct the jury on a lesser included offense, and (5) the consecutive sentences were improper.

{¶ 2} We affirm the trial court's judgment for a variety of reasons. First, the expert witness that Evans asked the court to appoint at the state's expense would not have been able to show that Evans was not acting recklessly and, therefore, would have provided evidence with very limited probative value. Second, because Evans was not incarcerated at the time a videotaped deposition, which was played at trial, was taken and was notified of that deposition, he waived any objection relating to his absence from the deposition. Third, the record does not reveal a total lack of communication between Evans and his attorney that would prevent an adequate defense, thus rendering counsel's actions effective. Fourth, the trial court did not err in failing to instruct the jury on negligent assault, as it is not a lesser included offense of assault because it contains an element not found in the definition of assault. Finally, the sentencing statutes mandate that Evans be ordered to serve his time consecutively and the consecutive sentences were for

different offenses. Thus, the trial court's order that he serve consecutive sentences was not cruel and unusual.

### Facts

{¶ 3} Evans suffers from epilepsy and takes medication to control his seizures. For a couple days prior to November 27, 1999, Evans failed to take his medication and, on November 27, he apparently had a seizure while driving his car. Evans was found passed out in his car in the middle of an intersection entering a parking lot. He had locked himself in with the windows rolled up and was found slumped over the steering wheel with blood coming from his mouth and beads of sweat on his forehead. He was nonresponsive. After emergency personnel roused him, Evans refused to open his doors and began to drive away from the scene. In the process, he injured a police officer and damaged some of the surrounding vehicles. A police officer gave chase and eventually stopped and arrested Evans.

{¶ 4} As a result of his actions, the Jefferson County Grand Jury indicted Evans on eight counts. Two of those counts were fourth degree felonies: assault in violation of R.C. 2903.13(B) and failure to comply with the order of a police officer with two specifications in violation of R.C. 2921.331(B). The remaining counts were all misdemeanors: resisting arrest, reckless operation of a motor vehicle, failure to obey a traffic device, and three counts of failure to stop after an accident.

{¶ 5} Although it is not contained in the record, Evans apparently moved to have his attorney, Reszke, withdrawn as counsel. The trial court heard and denied that motion. The trial court felt that the motion was made for the purposes of delay and that Evans would say he was unhappy with anyone that the trial court appointed as counsel. It informed Evans that he could retain counsel, appear pro se, or cooperate with his appointed counsel. At almost every subsequent appearance in court, including his trial and sentencing hearing, Evans complained about Reszke's representation. The trial court maintained its position that Evans had demonstrated that he would be displeased with any counsel and repeated his options.

{¶ 6} Evans also moved to retain an expert witness at the state's expense. He sought an expert in the field of law enforcement to prove that the law enforcement officials involved "did not react nor respond properly and reasonably in their capacity as law enforcement officers when presented with an individual in the midst of an epileptic seizure." The trial court denied that motion.

{¶ 7} The matter proceeded to trial where the jury found Evans guilty on every count except for the count charging him with failure to obey a traffic control device. Evans was sentenced to 18 months on the assault charge and 12

months on the failure-to-comply charge to be served consecutively, with concurrent sentences for the misdemeanor charges and a $100 fine for reckless operation. It is from this judgment that Evans timely appeals.

## Expert Witness

{¶ 8} Evans's first assignment of error asserts: "The trial court abused its discretion and committed reversible error in refusing to appoint an expert to aid in the defense of the indigent appellant."

{¶ 9} According to Evans, the trial court should have appointed an expert witness at the state's expense because there was a reasonable probability that the expert would have aided in his defense. Thus, he argues that the denial of that expert rendered his trial unfair. The state contends that Evans did not present sufficient evidence to demonstrate a reasonable necessity for the expert and that the type of expert Evans sought would only confuse the issues by diverting attention from the elements of the offense.

{¶ 10} Both the United States Supreme Court and the Ohio Supreme Court have consistently held that an indigent criminal defendant is entitled to an expert witness at the state's expense under certain conditions. "As a matter of due process, indigent defendants are entitled to receive the 'raw materials' and the ' "basic tools of an adequate defense," ' which may include provision of expert psychiatric assistance." *State v. Mason* (1998), 82 Ohio St.3d 144, 149, 694 N.E.2d 932, quoting *Ake v. Oklahoma* (1985), 470 U.S. 68, 77, 105 S.Ct. 1087, 84 L.Ed.2d 53; see, also, *Britt v. North Carolina* (1971), 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400; *State v. Broom* (1988), 40 Ohio St.3d 277, 533 N.E.2d 682.

{¶ 11} "Due process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution, requires that an indigent criminal defendant be provided funds to obtain expert assistance at state expense only where the trial court finds, in the exercise of a sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial." *Mason* at syllabus.

{¶ 12} The decision to appoint an expert is left to the trial court's broad discretion and its decision will not be reversed absent an abuse of that discretion. *State v. Wells* (Mar. 22, 2000), 7th Dist. No. 98–JE–3, at 8, 2000 WL 309401; see, also, *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, paragraph four of the syllabus. The phrase "abuse of discretion" connotes more than an error of law or judgment; it implies the trial court acted unreasonably,

arbitrarily, or unconscionably. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶ 13} When deciding whether to appoint an expert witness at the state's expense, the trial court must consider the following three factors: (1) the effect of the defendant's private interest in the accuracy of the trial if the requested service is not provided, (2) the burden on the government's interest if the service is provided, and (3) the probable value of the additional service and the risk of error in the proceeding if the assistance is not provided. *Mason* at 149, 694 N.E.2d 932. When considering these factors, the trial court must consider the value of the expert assistance to the defendant's proper representation at either the guilt or sentencing phase and the availability of alternative devices that would fulfill the same functions as the expert assistance sought. *Jenkins* at paragraph four of the syllabus.

{¶ 14} In order to receive an expert witness at the state's expense, the defendant must demonstrate more than a mere possibility of assistance from an expert. *State v. Campbell* (2000), 90 Ohio St.3d 320, 328, 738 N.E.2d 1178; *State v. Abelt* (2001), 144 Ohio App.3d 168, 174, 759 N.E.2d 847. At a minimum, the indigent defendant must present the trial judge with sufficient facts which will demonstrate a particularized need for the expert requested. *State v. Nields* (2001), 93 Ohio St.3d 6, 12, 752 N.E.2d 859; *Abelt*. "Undeveloped assertions that the proposed assistance would be useful to the defense are patently inadequate." *State v. Wright* (Sept. 27, 2001), 7th Dist. No. 97 CO 35, 2001 WL 1685275, at * 2.

{¶ 15} "[D]ue process does not require the provision of expert assistance relevant to an issue that is not likely to be significant at trial. Nor does due process require that an indigent defendant be provided all the assistance that a wealthier counterpart might buy. Rather, he or she is entitled only to the basic and integral tools necessary to ensure a fair trial." *Mason* at 149, 694 N.E.2d 932.

{¶ 16} Evans requested an expert in law enforcement training to establish that the officers which dealt with him on November 27, 1999, did not act properly towards an individual in the midst of an epileptic seizure. He claims that the expert's testimony that the officer should have dealt with him differently would demonstrate that he did not act recklessly, negating the mens rea element of the offense.

{¶ 17} The trial court properly denied Evans's motion because the expert he sought would not help him disprove any of the elements of the crimes that he was accused of committing. As the trial court pointed out, whether the officers acted properly does not have any bearing on whether Evans had the necessary mens rea to commit the offense. The nature of his act, whether it was committed

recklessly, is the same regardless of how those around him acted. Thus the trial court did not abuse its discretion when it denied his motion for this expert witness at the state's expense. Accordingly, Evans's first assignment of error is meritless.

## Confrontation of Witness

{¶ 18} Evans's second assignment of error asserts:

{¶ 19} "Appellant's constitutional rights pursuant to Section 10, Article I of the Ohio Constitution and the Sixth Amendment to the United States Constitution were violated in [his] not being able to confront a witness."

{¶ 20} Evans argues that his absence from Dr. Malik's deposition and the deposition's subsequent introduction into evidence violated his right to confront the witnesses against him. According to Evans, a criminal defendant always has the right to attend depositions. He contends that his failure to attend Dr. Malik's deposition means that it cannot be introduced into evidence unless he waived his presence in the manner described by Crim.R. 15(C). In response, the state cites a recent decision of this court holding that the procedures in Crim.R. 15(C) are not necessary when the defendant is not incarcerated at the time the deposition is taken.

{¶ 21} Crim.R. 15 governs the use of depositions in criminal proceedings. It provides that depositions may be used at a criminal trial or hearing only under certain circumstances. It specifies:

{¶ 22} "The defendant shall have the right to attend the deposition. If he is confined the person having custody of the defendant shall be ordered by the court to take him to the deposition. The defendant may waive his right to attend the deposition, provided he does so in writing and in open court, is represented by counsel, and is fully advised of his right to attend by the court at a recorded proceeding." Crim.R. 15(C).

{¶ 23} This court previously rejected the same arguments. In *State v. Hernandez* (June 11, 1999), 7th Dist. No. 97 C.A. 201, 1999 WL 397774, the defendant was notified of the taking of the deposition and his counsel was present, but the defendant did not attend and did not waive his presence. As in this case, the defendant was not incarcerated at the time the deposition was taken. Based upon these facts, this court held:

{¶ 24} " 'The defendant always has a right to attend the taking of a deposition. The last part of the rule is related to the situation where the defendant is confined. It is mandatory that he be ordered taken to the place of his deposition since he is not otherwise free to attend, but in such a case a waiver in writing after advice by the court and representation by counsel may eliminate this

necessity. However, a defendant who is not confined, as was the case here, is in no need of this special treatment. He is free to attend or not as he sees fit. * * *

{¶ 25} " 'The person who is not in confinement though may waive his right to attend simply by not going. To hold otherwise would result in the absurd requirement that a defendant could either prevent the taking of the deposition by not showing up, or to force the Sheriff, by refusing to waive his right to notice, to take him into custody so that he could be transported to the place where the deposition is to be taken. This was not the purpose of the rule.' " Id., quoting *State v. Villagomez* (1974), 44 Ohio App.2d 209, 213–214, 73 O.O.2d 215, 337 N.E.2d 167.

{¶ 26} Evans presents the same question as *Hernandez,* and we see no reason to change our position on this issue. In this case, Evans was not in custody at the time of the deposition, was notified of the deposition, and did not appear at the deposition. Because he was not in custody, the strictures of Crim.R. 15(C) governing the manner in which a defendant must waive his presence at a deposition do not apply. Accordingly, Evans's second assignment of error is meritless.

## Right to Counsel

{¶ 27} Evans's third assignment of error, asserts:

{¶ 28} "Appellant's constitutional rights were violated as he was denied his right to the assistance of counsel as guaranteed by .the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution."

{¶ 29} According to Evans, the record discloses that he repeatedly voiced his concerns over the adequacy of his counsel's representation to the court and the court did not give his concerns merit. He argues that this indicates the absence of any attorney-client relationship, and, therefore, it was unfair to force that particular counsel upon him. In response, the state argues that the trial court did not abuse its discretion when denying Evans's request for new counsel because Evans's lack of cooperation with counsel caused the problems in the relationship.

{¶ 30} An indigent defendant has the right to professionally competent, effective representation, not the right to have a particular attorney represent him. *State v. Murphy* (2001), 91 Ohio St.3d 516, 523, 747 N.E.2d 765; *State v. McNeill* (1998), 83 Ohio St.3d 438, 452, 700 N.E.2d 596. Therefore, an indigent defendant must demonstrate good cause to warrant substitution of counsel. *Murphy* at 523, 747 N.E.2d 765; *United States v. Iles* (C.A.6, 1990), 906 F.2d

1122, 1130. In order to demonstrate good cause, "the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." *State v. Coleman* (1988), 37 Ohio St.3d 286, 525 N.E.2d 792, paragraph four of the syllabus. "[O]nly in the most extreme of circumstances should appointed counsel be substituted." *State v. Glasure* (1999), 132 Ohio App.3d 227, 239, 724 N.E.2d 1165.

{¶ 31} There must be a legitimate reason for the defendant's lack of confidence in the attorney because good cause for dismissal cannot be determined solely according to the subjective standard of what the defendant perceives. *State v. Julious* (Dec. 5, 1996), 4th Dist. No. 96CA2409, 1996 WL 718262. For example, a total lack of communication between the attorney and client could be a basis for substitution of counsel. *Murphy,* 91 Ohio St.3d at 523, 747 N.E.2d 765. "Although there is no right to a 'meaningful attorney-client relationship,' *Morris v. Slappy* (1983), 461 U.S. 1, 13–14, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610, 621, a 'total lack of communication preventing an adequate defense' is a factor the court should consider in evaluating a defendant's request for substitute counsel. [*United States v.*] *Jennings* [C.A.6, 1996], 83 F.3d [145] at 148." Id.

{¶ 32} But mere hostility, tension, or personal conflicts between an attorney and client are not "a total lack of communication," if those interpersonal problems do not interfere with the preparation or presentation of a competent defense. *State v. Gordon* (2002), 149 Ohio App.3d 237, 241, 776 N.E.2d 1135, citing *State v. Henness* (1997), 79 Ohio St.3d 53, 65–66, 679 N.E.2d 686. Disagreement between the attorney and client over trial tactics or approach also do not warrant a substitution of counsel. *Glasure,* 132 Ohio App.3d at 239, 724 N.E.2d 1165. Moreover, a total lack of communication preventing an adequate defense must be a permanent, rather than a temporary, state of affairs between the attorney and the client. *State v. Cowans* (1999), 87 Ohio St.3d 68, 73, 717 N.E.2d 298. For instance, if the record is "replete with references" to discussions between counsel and the defendant after the trial court denied a motion to substitute counsel, then the defendant has not been denied the effective assistance of counsel. Id., quoting *Iles,* 906 F.2d at 1132.

{¶ 33} The issue Evans presents us with is similar to the circumstances in many previous cases. For instance, in *Henness,* the defendant complained that he should have been appointed new counsel because "counsel had pursued strategies against his wishes, lied to him, given him bad advice, and violated the attorney-client privilege." Id. at 65, 679 N.E.2d 686. He called his lawyers "clowns" and stated that he did not trust them. The Ohio Supreme Court said that the trial court did not abuse its discretion when it refused to appoint new counsel. In *Gordon,* the defendant complained to the First District that his attorney had failed to discuss trial strategy with him in the months preceding the

motion. Although the appellate court acknowledged that an attorney must consult his client on important trial decisions, it concluded that the trial court did not abuse its discretion, since the record reflected that the defendant and his attorney began communicating after the trial court denied the motion. Id. at 240–242, 776 N.E.2d 1135; see, also, *Cowans*; *State v. Charley* (Apr. 24, 2002), 9th Dist. No. 01CA007813, 2002 WL 701932.

{¶ 34} In this case, the trial court did not abuse its discretion when it concluded that there was not a total lack of communication between Evans and Reszke. The record reflects that the two repeatedly met after the trial court denied the motion for new counsel and that Reszke consulted with Evans about important strategic decisions, such as whether Evans would testify in his defense. Although the record clearly shows that Evans was unhappy with counsel, the majority of his complaints arose out of the communications between them, not from a total lack of communication. Accordingly, Evans's third assignment of error is meritless.

## Lesser Included Offense

{¶ 35} Evans's fourth assignment of error asserts:

{¶ 36} "The trial court erred to the prejudice of the appellant by refusing to instruct the jury on the lesser included offense of negligent assault on count one (The assault of a police officer charge against appellant)."

{¶ 37} Evans argues that a reasonable jury would have concluded that his actions were clearly the result of negligence. Accordingly, he asserts that the trial court should have instructed the jury on the lesser included offense of negligent assault. The state contends that negligent assault is not a lesser included offense of assault because it contains an additional element. It further argues that the case that Evans relies on is no longer good law.

{¶ 38} The state is correct when it states that negligent assault is not a lesser included offense of assault. "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph three of the syllabus.

{¶ 39} A person can commit assault in two different ways. First, he commits assault when he knowingly causes or attempts to cause physical harm to another or to another's unborn. R.C. 2903.13(A). Second, he commits assault when he recklessly causes serious physical harm to another or to another's unborn. R.C.

2903.13(B). In this case, Evans was charged with a violation of R.C. 2903.13(B). In contrast, a person commits negligent assault when he negligently, by means of a deadly weapon or dangerous ordnance as defined in R.C. 2923.11, causes physical harm to another or to another's unborn. R.C. 2903.14(A).

{¶ 40} As can be seen, negligent assault contains an element which assault does not, namely, that the offense must be committed by means of a deadly weapon or dangerous ordnance. Thus, negligent assault does not meet the second prong of the *Deem* test because one can recklessly cause serious harm without, for example, the use of a gun. As *Deem* stated, if the greater offense *can* be committed without the lesser offense also being committed, then the lesser offense is not a lesser included offense. *Deem*, 40 Ohio St.3d at 210, 533 N.E.2d 294. Thus, aggravated assault is not a lesser included offense of felonious assault, because aggravated assault contains an additional element, that the offender must be acting under the influence of sudden passion or in a sudden fit of rage that is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force. Id. For the same reason, voluntary manslaughter is not a lesser included offense of murder. See *State v. Tyler* (1990), 50 Ohio St.3d 24, 36, 553 N.E.2d 576; see, also, *State v. Bryan* (1998), 127 Ohio App.3d 573, 713 N.E.2d 494 (sexual battery is not a lesser included offense of rape); *State v. Wong* (1994), 95 Ohio App.3d 39, 641 N.E.2d 1137 (reckless assault is not a lesser included offense of felonious assault); *State v. Price* (1992), 80 Ohio App.3d 35, 608 N.E.2d 818 (corruption of a minor is not a lesser included offense of rape); *State v. Egolf,* 11th Dist. No. 2000–L–113, 2003-Ohio-601, 2003 WL 292108 (negligent assault is not a lesser included offense of attempted murder); *State v. Robertson,* 8th Dist. No. 80910, 2002-Ohio-6814, 2002 WL 31771232 (assault is not a lesser included offense of robbery), and *State v. Parker,* 149 Ohio App.3d 681, 2002-Ohio-5536, 778 N.E.2d 646 (disorderly conduct as a fourth degree misdemeanor is not a lesser included offense of assault).

{¶ 41} Of the Ohio Supreme Court's decisions dealing with whether an offense is a lesser included offense of another offense, *State v. Barnes* (2002), 94 Ohio St.3d 21, 26, 759 N.E.2d 1240, is the most analogous to this case. In *Barnes,* the defendant was charged with attempted murder. The trial court also instructed the jury on the offense of felonious assault with a deadly weapon as a lesser included offense of attempted murder. The jury found the defendant guilty of felonious assault with a deadly weapon. The appellate court reversed that decision, finding that felonious assault with a deadly weapon was not a lesser included offense of attempted murder.

{¶ 42} The Ohio Supreme Court first stated that "a person is guilty of attempted murder when he or she 'purposely * * * engage[s] in conduct that, if successful, would constitute or result in' the purposeful killing of another." Id. at

26, 759 N.E.2d 1240, quoting R.C. 2923.02(A). It also noted that a person is guilty of felonious assault with a deadly weapon when that person knowingly " '[c]ause[s] or attempt[s] to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance.' " Id., quoting R.C. 2903.11(A)(2).

{¶ 43} "The state urges us to find that felonious assault under R.C. 2903.11(A)(2) can be a lesser included offense of attempted murder in the specific factual scenario presented here (viz., when an offender uses a deadly weapon as a means of attempting murder). But the second prong of the *Deem* test requires us to examine the offenses at issue *as statutorily defined* and not with reference to specific factual scenarios. '[T]he evidence presented in a particular case is irrelevant to the determination of whether an offense, as statutorily defined, is necessarily included in a greater offense.' [*State v.*] *Kidder* [ (1987), 32 Ohio St.3d 279, 282, 513 N.E.2d 311]; see, also, *State v. Koss* (1990), 49 Ohio St.3d 213, 218–219, 551 N.E.2d 970, 975. Our comparison of the statutory elements of the two offenses at issue here leads us to conclude that felonious assault under R.C. 2903.11(A)(2) is not a lesser included offense of attempted murder because it is possible to commit the greater offense without committing the lesser one. For example, an offender may commit an attempted murder *without* use of a weapon, meaning that 'attempted murder can *sometimes* be committed without committing felonious assault under [R.C. 2903.11(A)(2) ].' (Emphasis sic.) *State v. Nelson* (1996), 122 Ohio App.3d 309, 315, 701 N.E.2d 747, 750. We are therefore unable to conclude that 'the greater offense [attempted murder] cannot, as statutorily defined, *ever* be committed without the lesser offense [felonious assault], as statutorily defined, also being committed.' (Emphasis added.) *Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph three of the syllabus. Accordingly, the court of appeals correctly found the trial court's instruction to be erroneous." (Emphasis sic.) Id.

{¶ 44} For all practical purposes the differences between assault and negligent assault in this case are the same as those between attempted murder and felonious assault with a deadly weapon in *Barnes*. This conclusion is supported by the Eighth District's recent opinion in *State v. Jones*, 8th Dist. No. 80737, 2002-Ohio-6045, 2002 WL 31478933. In *Jones*, the defendant argued that negligent homicide is a lesser included offense of murder. The appellate court noted that negligent homicide is defined as "negligently caus[ing] the death of another * * * by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code." Id. at ¶ 90. "In accordance with the definition set forth in *Deem*, negligent homicide is not a lesser included offense of murder proscribed in R.C. 2903.02(B). This is because this greater offense *can* be committed without the lesser offense, negligent homicide, also being committed." Id. at ¶ 93.

{¶ 45} The difference between negligent homicide and murder is the same as the difference between negligent assault and assault. In both cases, the lesser offense is committed negligently "by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code." In both cases, someone can commit the greater offense without committing the lesser offense.

{¶ 46} In the face of *Deem* and its progeny, Evans cites *State v. Body* (Jan. 25, 1983), 5th Dist. No. 82–CA–13, 1983 WL 6356, for the proposition that negligent assault is a lesser included offense of assault. *Body* was decided five years before *Deem* and, therefore, has no bearing on how we should decide this case. Applying the third paragraph of the *Deem* syllabus, we conclude that negligent assault is not a lesser included offense of assault. Thus, Evans's fourth assignment of error is meritless.

## Consecutive Sentences

{¶ 47} Evans's fifth and final assignment of error asserts:

{¶ 48} "The trial court committed plain error and violated appellant's constitutional rights against cruel and unusual punishment by sentencing him consecutively for charges from the same incident."

{¶ 49} Evans claims that the trial court did not state the reasons why it was sentencing him to consecutive sentences at the sentencing hearing. He also claims that the incident must be taken as a single event since the "assault" was committed "at the same time or immediately prior" to when Evans failed to comply with the lawful order of the police officer. In response, the state points to the judgment entry and hearing transcript to demonstrate that the trial court made the requisite findings. It also argues that the trial court was mandated to sentence Evans to consecutive sentences by R.C. 2929.14(E)(3). Finally, it argues that the incidents leading to the failure-to-comply charge and the assault charge were separate and separately chargeable.

{¶ 50} A trial court may sentence an offender to consecutive sentences for felony offenses only under certain circumstances pursuant to R.C. 2929.14(E). When doing so, the trial court must make the findings required by R.C. 2929.14(E) and must state its reasons for those findings on the record. R.C. 2929.19(B)(2)(c); *State v. Thomas* (Mar. 22, 2002), 7th Dist. No. 2000 CO 22, 2002 WL 925033, at * 5. Failure to make either the necessary findings or to sufficiently state the reasons for those findings on the record constitutes reversible error. *State v. Gary* (2001), 141 Ohio App.3d 194, 196, 750 N.E.2d 640. However, the trial court does not need to recite the exact words of the statute in a talismanic ritual before imposing consecutive sentences on the offender. *State v. Finch* (1998), 131 Ohio App.3d 571, 574, 723 N.E.2d 147.

{¶ 51} Evans was convicted of two felonies, a violation of 2903.13(B) and a violation of R.C. 2921.331(B). "[I]f a prison term is imposed for a felony violation of division (B) of section 2921.331 of the Revised Code, the offender shall serve that prison term consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender." R.C. 2929.14(E)(3). Because R.C. 2929.14(E)(3) makes consecutive sentences mandatory in these types of cases, the trial court complied with the statute. See *State v. Groves*, 7th Dist. No. 853, 2002-Ohio-5245, 2002 WL 31170147, ¶ 34–37.

{¶ 52} Although the trial court needed no further reason to sentence Evans to consecutive sentences, it also made the findings necessary under R.C. 2929.14(E)(4). That subsection provides as follows:

{¶ 53} "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

{¶ 54} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

{¶ 55} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶ 56} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." R.C. 2929.14(E)(4).

{¶ 57} The trial court made the following finding in its sentencing entry:

{¶ 58} "Consecutive sentences are justified and necessary in light of the fact that great harm was caused by this defendant and his criminal history requires consecutive sentences and because consecutive sentences are necessary to fulfill the purposes of R.C. 2929.11 and are not disproportionate to the seriousness of the Defendant's conduct and the danger posed by this Defendant."

{¶ 59} At the sentencing hearing, the trial court stated its reasons for making these findings. It spoke of the permanent, debilitating nature of the injury the

police officer suffered, the dangerousness of Evans's actions to the general public, the unreasonableness of his actions, and his prior criminal history. Thus, the trial court's findings comply with R.C. 2929.14(E)(4) and its reasons with R.C. 2929.19(B)(2)(c).

{¶ 60} As a final argument, Evans states that the trial court could not have sentenced him to consecutive sentences because the crimes of assault on a police officer and failure to comply with a lawful order of a police officer must be taken as a single event. He cites no authority in support of this argument.

{¶ 61} Given the lack of specificity, it is not clear exactly what legal theory Evans is attempting to argue when he claims that he could not be sentenced consecutively because the offenses arose out of a single event. He could be arguing that the offenses are allied offenses of similar import. R.C. 2941.25 governs allied offenses:

{¶ 62} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶ 63} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them." Id.

{¶ 64} When deciding whether offenses are allied offenses of similar import, a court must compare the offenses in the abstract to see whether their elements correspond to such a degree that committing one crime will result in committing the other. *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, paragraph one of the syllabus; *State v. Blankenship* (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816. The elements of assault and failure to comply do not correspond to such a degree that committing one crime will result in committing the other. Thus, they are not allied offenses of similar import.

{¶ 65} Evans could also be trying to make a simpler argument, that his sentence is cruel and unusual. But a sentence within the statutory limits generally does not violate the constitutional prohibition against cruel and unusual punishment unless it shocks the moral sense of the community. *State v. Bosman* (Jan. 14, 2002), 12th Dist. No. CA2001–05–101, 2002 WL 42887, citing *State v. Juliano* (1970), 24 Ohio St.2d 117, 120, 53 O.O.2d 307, 265 N.E.2d 290; *Broadview Hgts. v. Baron* (2000), 139 Ohio App.3d 729, 745 N.E.2d 516; *State v. Brownlow* (1991), 75 Ohio App.3d 88, 598 N.E.2d 888; *State v. Fields* (Nov. 29, 1993), 12th Dist. No. CA93–04–025, 1993 WL 489731. The trial court's order that the

sentences be served consecutively is within the statutory guidelines. R.C. 2929.14(E). Thus, Evans's fifth assignment of error is meritless.

{¶ 66} Because each of Evans's assignments of error are meritless, the trial court's judgment is affirmed.

Judgment affirmed.

WAITE, P.J., and VUKOVICH, J., concur.