[Cite as *State v. Reed*, 2013-Ohio-3302.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 12AP080049 |
| | : | |
| RUSSELL J. REED | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Tuscarawas County
Court of Common Pleas, Case No. 2012
CR 03 0062

JUDGMENT:      AFFIRMED IN PART: REVERSED IN
PART, AND REMANDED

DATE OF JUDGMENT ENTRY:      July 19, 2013

APPEARANCES:

For Plaintiff-Appellee:      For Defendant-Appellant:

RYAN STYER      GEORGE URBAN
TUSCARAWAS CO. PROSECUTOR      116 Cleveland Ave. NW
MICHAEL J. ERNEST      Suite 808
125 East High Ave.      Canton, OH 44702
New Philadelphia, OH 44663

*Delaney, J.*

{¶1}  Appellant Russell J. Reed appeals from the judgment entries of conviction and sentence in the Tuscarawas County Court of Common Pleas.  Appellee is the State of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2}  This case arose on February 22, 2012, when Bobby Beller stole heroin from appellant, his dealer.  Appellant subsequently hunted down Beller and fired three shots into the vehicle in which Beller was riding, striking both Beller and John Lineberry.

*Bobby Beller Steals Heroin from Appellant*

{¶3}  Bobby Beller is an admitted heroin addict with a felony criminal history who lives in New Philadelphia, Ohio.  For several months in late 2011 and early 2012, he bought his heroin daily or every other day from appellant, whom he knew as "J.R." and who lived in an apartment behind the Dairy Queen in New Philadelphia.  Beller and appellant had a deal whereby Beller would tattoo appellant in exchange for heroin.

{¶4}  John Lineberry is described as an "independent taxi driver" who does not use drugs himself but would ferry drug users about their daily errands in his vehicle, no questions asked.  Lineberry routinely gave Beller rides to appellant's apartment but did not go inside.  Lineberry and appellant never met face to face.

{¶5}  Around 10:00 a.m. on February 22, 2012, Beller stopped by appellant's apartment.  A number of other drug users were present, including Toni Quillen and Cole Hurst. At some point, appellant dropped a bag of heroin and didn't realize some fell out. Beller grabbed a quantity of heroin, observed by both Quillen and Hurst but unnoticed

by appellant. Beller and Quillen left the apartment hurriedly, claiming they were leaving to pick up guns from Quillen's boyfriend to exchange for more heroin.

{¶6} Beller and Quillen got into Lineberry's car, a green Ford Taurus. Beller and Quillen used some of the stolen heroin. Lineberry dropped Beller off at Wal-Mart, then took Quillen home to her apartment. Lineberry then returned to Wal-Mart to pick up Beller. Lineberry drove and Beller sat in the front passenger seat. All of the car windows were up because it was very cold outside.

{¶7} In the meantime, appellant realized some of his "dope" was missing and suspected either Beller or Quillen had taken it. Appellant repeatedly called Beller on his cell phone, but Beller only answered once. Appellant asked if Beller and Quillen were returning to the apartment, and Beller said yes, but in fact he had no intention of returning. Beller ignored the rest of appellant's calls because he had the "sense" appellant knew some of his dope was missing and was trying to track it down.

{¶8} Toni Quillen called appellant as soon as Lineberry dropped her off at home to tell him it was Beller who stole the heroin. Appellant was very angry and she wanted to make sure he knew she didn't take it. Appellant later called Quillen back, looking for Beller. Appellant also used Cole Hurst to track down Beller, promising him drugs if Hurst could find Beller and reveal his whereabouts. Hurst was able to reach Beller on his cell phone, found out he was at Wal-Mart, and reported this information back to appellant.

*Beller and Lineberry are Shot in the Parking Lot*

{¶9} Upon leaving Wal-Mart, Lineberry drove Beller back to Lineberry's apartment complex in the 1000 block of Maple Avenue and pulled into the parking lot.

Lineberry parked the car and turned it off. Beller began to gather his grocery bags when something caught his eye in his peripheral vision. He looked up and saw appellant outside the car, with a gun pointed at Beller's face. Suddenly there was a "pop" and the window broke.

{¶10} Beller scrambled from his spot in the front passenger seat across the console, into the back seat, and out the rear driver's-side door as appellant fired more shots. In the meantime, Lineberry was already out of the car, lying on the ground. Beller crawled on top of him. When the shots stopped, Beller waited a moment and then got up in time to see appellant running away. Beller attempted to chase after appellant, but realized he had been shot in the left leg. The bullet went completely through Beller's leg, entering his mid-thigh below his jeans pocket and exiting through the cheek of his left buttock. When paramedics cut his pants off to treat him, the bullet rolled out of his pant leg and was recovered for evidence.

{¶11} Lineberry was also shot. A bullet struck him in the right leg behind his knee, and passed completely through the leg. Lineberry's injury required surgery and extensive aftercare in a nursing home for over four months.

{¶12} Beller and Lineberry were able to make their way into Lineberry's apartment and his roommate called 911.

*The Neighborhood Reacts*

{¶13} Two independent witnesses observed the aftermath of the shootings. Wayne Everhart was changing a gas tank at his workplace when he heard a pop, followed by two more pops. He realized the sound was gunfire, and seconds later saw a man run up the sidewalk, talking into a cell phone, wearing a brown hoodie. Everhart

heard the man say "he" shot "him" several times. Everhart called 911. Nancy Charnock was returning from her lunch break, heading west on Maple Avenue, when she heard "pop, pop" and saw a man in a brown hoodie running up the street. Everhart continued to drive past the parking lot of the apartment complex, and saw one man trying to help another man up off of the ground. Charnock asked if the men needed help and they said no. She then saw blood running down one man's pant leg, and drove off. Charnock called 911 upon her return to her office.

{¶14} Deputy Matt Stein of the Tuscarawas County Sheriff's Office was in the vicinity of the shootings and was dispatched to Maple Avenue. He saw kids outside at an elementary school playground very close to the scene of the reported shooting, and knew the gunman had not yet been located. Stein directed school authorities to lock down the school. Stein then walked through the playground and down an alley. Within 200 feet of the playground, Stein discovered a black handgun lying on the ground in the yard of a residence on Grant Street.

{¶15} Appellant's DNA was found on the 9-millimeter Hi-Point semi-automatic pistol found near the school. This weapon was determined to have fired the two bullet jackets recovered at the scene in the parking lot.

*Appellant Testifies at Trial*

{¶16} Appellant testified on his own behalf at trial, largely confirming the testimony of appellee's witnesses and adding the detail that he committed the shootings while he was high.

{¶17} Appellant stated he is from Detroit and freely admitted he came to New Philadelphia for the purpose of selling drugs. On February 22, 2012, he was so busy

cutting up drugs for his customers, and doing drugs himself, that he didn't realize his heroin stash dropped out of his basketball shorts and Beller took $600 worth of it. Appellant stated he was "popping pills," smoking marijuana, and drinking beer on the morning of February 22. He thought it was strange when Beller and Quillen took off because Beller was supposed to give appellant a tattoo. "Chaz," another drug user present in the apartment, told appellant he saw Beller take some heroin, so appellant began to track appellant down. Beller wouldn't answer appellant's calls, so he used "Chaz's" phone to call and Beller answered. Appellant asked Beller when he was coming back and Beller claimed he would return soon with some guns Quillen had planned to trade for heroin. Appellant kept asking Beller where he was but Beller wouldn't answer the question.

{¶18} Appellant testified he told Cole Hurst to find out where Beller was and in exchange he would "throw him some dope." Hurst determined Beller was at Wal-Mart, so appellant went there first and scoured the aisles, looking for him. He eventually tracked Beller to a Dollar Store and then followed Lineberry's green Taurus to the apartment complex parking lot on Maple Avenue. He watched Beller and Lineberry gather bags of groceries and prepare to exit the car.

{¶19} Appellant claimed he ran up to the car when Beller's door was open, pointed the gun down at Beller's leg, and fired. The car door closed so "[he] popped the glass out the door then I s—then he started scramblin' and he jumped on Mr. John Lineberry towards his way and I shot another shot at him and I believe he scrambled to the back and got in the back and I shot another shot towards his leg and I ran after

that."  (T. 457).  Appellant claimed he only wanted to injure Beller, not kill him, because "if I'd wanted to kill him, I could have."

{¶20} Upon cross-examination, appellant admitted he was under the influence of narcotics, marijuana, and beer on the morning of February 22, and he was "really mad" at Beller; he knew he was going to shoot him.  Appellant did tell Cole Hurst in reference to Beller, "I'm going to pop his bitch ass," but he meant he would scare Beller, not kill him.

*Indictment, Conviction, and Sentence: Strife between Appellant and Defense Trial Counsel*

{¶21} Appellant was charged by indictment with two counts of attempted murder pursuant to R.C. 2923.02(A) and R.C. 2903.02(A), both felonies of the first degree, and both with gun specifications pursuant to R.C. 2941.145; two counts of felonious assault pursuant to R.C. 2903.11(A)(2), both felonies of the second degree and both with gun specifications pursuant to R.C. 2941.145; and three counts of drug trafficking pursuant to R.C. 2925.03(A), all felonies of the fifth degree.

{¶22} Appellant entered pleas of not guilty and counsel was appointed to represent him.[1]  A jury trial was scheduled for July 11, 2012, and on July 9, 2012, a final pretrial was held, during which defense trial counsel stated he had visited appellant in jail and appellant wanted him to withdraw from the case.

{¶23} Appellant stated he felt defense counsel was working with the prosecution and not advocating for him effectively because no suppression motion was filed and defense counsel didn't seek to have the judge recuse herself.  When the trial court inquired further, appellant stated he heard talk at the jail about the judge making an

---

[1] Attorney Matthew Petit.

example of another defendant during sentencing; he asked counsel to bring him a newspaper article about the judge's comment but counsel had not done so. The trial court stated she was not inclined to permit counsel to withdraw two days before trial unless another attorney entered a notice of appearance.

{¶24} The case proceeded to jury trial. During a break in the trial, the issue of appellant's rejection of defense trial counsel arose again. The trial court asked appellant to specify what he didn't like about his attorney, and appellant stated he didn't like being characterized as though he was a "ruthless animal" over dope and did not approve of counsel's opening statement. Appellant's claim was that he didn't intend to kill Bobby Beller, only to wound or scare him because Beller had stolen his dope. The trial court noted this was exactly the thrust of counsel's opening statement. Defense trial counsel noted he tried repeatedly in the weeks preceding trial to get appellee to reduce the charges from attempted murder to felonious assault and/or to offer less than twenty years in prison, but appellee was unwilling to do so.

{¶25} Appellant again raised counsel's decision not to file a motion to suppress. Counsel noted he reviewed videos of taped drug buys with appellant and appellant was not willing to watch the videos in their entirety. Defense trial counsel stated he could find no arguable basis for a suppression motion, and therefore had not filed one.

{¶26} Finally, defense trial counsel noted that although the trial was in its early stages, appellant insisted on testifying despite being strongly advised against doing so.

{¶27} The trial court found there was not a complete breakdown in the attorney-client relationship and no irreconcilable conflict between appellant and defense trial counsel. Counsel was still willing to proceed with trial, his opening statement was

consistent with the theory of the case appellant wanted to argue, and new counsel was not retained. The trial court noted appellant's objection for the record and the trial continued.

{¶28} Appellant moved for judgment of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence and at the close of all of the evidence, and the motions were overruled. Appellant was found guilty as charged.[2] Appellee acknowledged the counts of felonious assault merge with the counts of attempted murder, and elected to sentence on the two counts of attempted murder plus firearm specifications and the three counts of drug trafficking. The trial court sentenced appellant to consecutive prison terms of ten years on each count of attempted murder, three years on each firearm specification, and 12 months on each count of drug trafficking, for an aggregate prison term of 29 years.

{¶29} Appellant now appeals from the judgment entry of his conviction and sentence.

{¶30} Appellant raises four assignments of error:

**ASSIGNMENTS OF ERROR**

{¶31} "I. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶32} "II. APPELLANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND

---

[2] Prior to trial, appellant had entered pleas of guilty to the three counts of drug trafficking.

ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION, BECAUSE HIS

TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE."

{¶33} "III.   THE TRIAL COURT ABUSED ITS DISCRETION BY NOT

PERMITTING APPELLANT TO HAVE NEW TRIAL COUNSEL."

{¶34} "IV.  THE TRIAL COURT ERRED BY NOT MERGING THE SENTENCES

FOR THE FIREARM SPECIFICATIONS."

**ANALYSIS**

I.

{¶35} In his first assignment of error, appellant asserts that his convictions for

two counts of attempted murder are not supported by sufficient evidence and are

against the manifest weight of the evidence.[3]  We disagree.

{¶36} The legal concepts of sufficiency of the evidence and weight of the

evidence are both quantitatively and qualitatively different.  *State v. Thompkins*, 78 Ohio

St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus.  The standard

of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*,

61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which

the Ohio Supreme Court held, "An appellate court's function when reviewing the

sufficiency of the evidence to support a criminal conviction is to examine the evidence

admitted at trial to determine whether such evidence, if believed, would convince the

average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry

is whether, after viewing the evidence in a light most favorable to the prosecution, any

---

[3] Appellant does not challenge his convictions upon two counts of felonious assault plus
gun specifications nor three counts of drug trafficking.

rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶37} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶38} Appellant was found guilty of two counts of attempted murder pursuant to R.C. 2923.02 and R.C. 2903.02, which, to paraphrase, prohibit any person from purposely engaging in conduct that, if successful, would cause the death of another. Appellant's specific challenge to the manifest weight and sufficiency of the evidence on appeal is similar to his argument at trial: he had no intention of killing Beller or Lineberry and appellee failed to prove otherwise. We find, though, that the record contains sufficient evidence of attempted murder of both victims, and appellant has failed to establish the jury lost its way in considering the evidence.

{¶39} The most compelling evidence in support of appellant's convictions is the fact that he approached a car with two people inside and point-blank fired three shots into it with a semi-automatic firearm. We have only appellant's self-serving testimony that Beller's car door was open when appellant fired the first shot, allegedly allowing him

to fire at Beller's legs. The physical evidence discounts appellant's testimony. Appellant admitted he continued to shoot at Beller as he scrambled to get out of the car. Appellee's crime scene investigator suggested that the evidence showed one of the three shots in fact struck the pillar of the vehicle, near where Beller's head would have been. If only three shots were fired, the physical evidence establishes the first shot was most likely fired into the pillar, Beller started climbing over the seat, and two more shots were fired, one of which struck Beller in the left leg and one which struck Lineberry. The physical evidence therefore belies appellant's account of a more deliberate, cautious, aimed attack.

{¶40} Appellant's own testimony about his drug and alcohol use on the day of the shootings is impossible to reconcile with his argument as well. Appellant argues he was such a good shot that he was able to deliberately strike two men in the legs as they moved about inside and clambered out of a vehicle, and yet he was, by his own account, under the influence of narcotics, marijuana, and beer while doing so.

{¶41} Appellant's claim that he merely sought to scare or warn Beller is also undermined by his actions in the immediate aftermath of discovering some of his dope had been stolen. Other users rushed to tell appellant Beller stole the dope to deflect blame from themselves, and he became enraged. He told Cole Hurst he wanted to shoot Beller. In his statement to police, he admitted that he wanted to "fuck [Beller] up." In light of the circumstances surrounding the shootings, the jury could reasonably find appellant acted with purpose to cause the deaths of Beller and Lineberry.

{¶42} Appellant's convictions are not against the manifest weight or sufficiency of the evidence and appellant's first assignment of error is overruled.

II.

{¶43} In his second assignment of error, appellant argues he received ineffective assistance of trial counsel.  We disagree.

{¶44} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See*, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶45} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶46} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

*Matters outside the Record*

{¶47} Appellant alleges a number of bases for ineffective assistance which are outside the record. He claims counsel did not view all of the discovery, that he argued with counsel the day before trial, and that his poor relationship with counsel affected his preparedness for testifying in his own defense.

{¶48} We have previously noted, however, that where an ineffective assistance of counsel claim cannot be supported solely on the trial court record, it should not be brought on direct appeal. *State v. Radel*, 5th Dist. No. 2009-CA-00021, 2009-Ohio-3543, ¶ 15, citing *State v. Cooperrider*, 4 Ohio St.3d 226, 228, 448 N.E.2d 452 (1983); See, *State v. Leeper,* 5th Dist. No. 2004CAA07054, 2005-Ohio-1957; *State v. Fryer,* 90 Ohio App.3d 37, 627 N.E.2d 1065 (8th Dist.1993). In *Cooperrider,* the Ohio Supreme Court held that where an appellant alleges matters outside the record as the basis for a claim of ineffective assistance of counsel, the proper procedure is not direct appeal but the post conviction remedies of R.C. 2953.21, which permit an appellant to present evidence of counsel's ineffectiveness at a hearing before the trial court. Id. See also, *State v. Barnett*, 73 Ohio App.3d 244, 249, 596 N.E.2d 1101(1991); *State v. Day,* Cuyahoga App. No. 89777, 2008-Ohio-4122 at ¶ 42.

{¶49} In the instant case, the discussions between appellant and trial counsel took place off the record, although the trial court and the parties went to great lengths to document appellant's complaints. There is no evidence in the record from which we can find that trial counsel did not show appellant the entire discovery, or argued with his client to the extent that the attorney-client relationship was irretrievably broken. Because a determination of this portion of appellant's claim of ineffective assistance of

counsel involves facts outside the record, appellant's argument concerning his alleged conflicts with defense counsel must fail on direct appeal. *Radel,* supra 2009-Ohio-3543 at ¶ 17.

*Failure to Object to Consecutive Sentence on Gun Specifications*

{¶50} Appellant further argues counsel was ineffective in failing to object to the trial court's decision to run the sentences on the gun specifications concurrently. Based on our discussion infra in appellant's fourth assignment of error, we find this issue to be moot.

{¶51} Appellant's second assignment of error is therefore overruled.

III.

{¶52} In his third assignment of error, appellant argues the trial court erred in not appointing new counsel two days prior to trial. We disagree.

{¶53} We have noted the right to competent counsel does not require that a criminal defendant develop and share a "meaningful relationship" with his attorney. *State v. Swogger*, 5th Dist. No. 2011-CA-007, 2011-Ohio-5607, ¶ 12, citing *Morris v. Slappy*, 461 U.S. 1, 13, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983).

{¶54} In the context of reviewing a claim by a defendant that the trial court abused its discretion by overruling the defendant's request to discharge court-appointed counsel and to substitute new counsel, courts have taken the approach that the defendant must show a complete breakdown in communication in order to warrant a reversal of the trial court's decision. *Swogger,* supra, 2011-Ohio-5607 at ¶ 13. Hostility, tension, or personal conflicts between an attorney and a client that do not interfere with the preparation or presentation of a competent defense are insufficient to justify a

change in appointed counsel. See *State v. Henness*, 79 Ohio St.3d 53, 65–66, 679 N.E.2d 686 (1997). Furthermore, "[m]erely because appointed counsel's trial tactics or approach may vary from that which appellant views as prudent is not sufficient to warrant the substitution of counsel." *State v. Glasure*, 132 Ohio App.3d 227, 239, 724 N.E.2d 1165 (7th Dist.1999); *State v. Evans*, 153 Ohio App.3d 226, 2003–Ohio–3475, 792 N.E.2d 757, ¶ 31 (7th Dist.); *State v. Newland,* 4th Dist. No. 02CA2666, 2003–Ohio–3230 at ¶ 11.

{¶55} A defendant has no constitutional right to determine trial tactics and strategy of counsel. *State v. Cowans*, 87 Ohio St.3d 68, 72, 717 N.E.2d 298 (1999); *State v. Conway,* 108 Ohio St.3d 214, 2006–Ohio–791, 842 N.E.2d 996, ¶ 150; *State v. Donkers,* 170 Ohio App.3d 509, 867 N.E.2d 903, 2007–Ohio–1557, ¶ 183 (11th Dist.). Rather, decisions about viable defenses are the exclusive domain of defense counsel after consulting with the defendant. *Id.* When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N .E.2d 1189 (1980), citing *People v. Miller*, 7 Cal.3d 562, 573–574, 102 Cal.Rptr. 841, 498 P.2d 1089 (1972); *State v. Wiley,* 10th Dist. No. 03AP–340, 2004–Ohio–1008, ¶ 21.

{¶56} In the instant case, appellant has not established that appointment of new counsel was warranted. Our review of the record indicates trial counsel's strategy was consistent with the defense appellant wanted him to pursue: he didn't intend to kill the victims, only to "frighten" Beller or shoot him in the leg. Appellant argues he didn't have enough time to discuss his testimony with counsel, and their relationship made

discussion difficult, but it is evident from the record counsel strongly advised appellant against testifying but appellant disregarded the advice. Appellant then proceeded to admit to drug and alcohol use on the day of the offense, among other damaging admissions. In light of the evidence at trial, we find no demonstration that counsel failed to research the facts or the law or was ignorant of a crucial defense.

{¶57} Appellant has failed to demonstrate a complete breakdown in communication which would have required the trial court to appoint new counsel. Appellant's third assignment of error is overruled.

IV.

{¶58} In his fourth assignment of error, appellant argues his convictions and sentences upon the two firearms specifications should have merged. We agree.

{¶59} Appellant noted in his second assignment of error that no objection was raised to the trial court's decision to sentence appellant consecutively on the two firearms specifications. We find the decision to be reviewable as plain error. See, *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923.

{¶60} R.C. 2929.14(B)(1) states in pertinent part:

> (a) Except as provided in division (B)(1)(e) of this section, if an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to a specification of the type described in section 2941.141, 2941.144, or 2941.145 of the Revised Code, the court shall impose on the offender one of the following prison terms:
>
> * * * *.

(ii) A prison term of three years if the specification is of the type described in section 2941.145 of the Revised Code that charges the offender with having a firearm on or about the offender's person or under the offender's control while committing the offense and displaying the firearm, brandishing the firearm, indicating that the offender possessed the firearm, or using it to facilitate the offense;

* * * *.

(b) If a court imposes a prison term on an offender under division (B)(1)(a) of this section, the prison term shall not be reduced pursuant to section 2967.19, section 2929.20, section 2967.193, or any other provision of Chapter 2967 or Chapter 5120 of the Revised Code. Except as provided in division (B)(1)(g) of this section, a court shall not impose more than one prison term on an offender under division (B)(1)(a) of this section for felonies committed as part of the same act or transaction.

* * * *.

{¶61} Both parties have directed us to *State v. Stevens*, in which the Second District Court of Appeals examined merger of firearm specifications in the context of whether an offender committed multiple acts with a common purpose, rarely an easy question when an offender has committed multiple offenses against multiple victims. 179 Ohio App.3d 97, 2008-Ohio-5775, 900 N.E.2d 1037 (2nd Dist.). The question is whether the offenses were committed with a single objective for the purposes of R.C. 2929.14(B)(1)(b), and upon our review of the record, we find appellant committed the

offenses as part of the same act or transaction, and the trial court should therefore have merged the firearms specifications for sentencing.  As in *Stevens*, the evidence does not support the conclusion that appellant had targeted each victim individually.  Id.

{¶62} Appellant's fourth assignment of error is sustained.

## CONCLUSION

{¶63} Having overruled appellant's first, second, and third assignments of error, and sustained his fourth assignment of error, we hereby remand this matter to the trial court for further proceedings consistent with this opinion.

By:  Delaney, J. and

Hoffman, P.J.

Wise, J., concur.

HON. PATRICIA A. DELANEY

HON. WILLIAM B. HOFFMAN

HON. JOHN W. WISE