[Cite as *State v. Stephens*, 2013-Ohio-5008.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | : | JUDGES: |
|---|---|---|
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| FRANCO STEPHENS | : | Case No. 12CA120 |
| | : | |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Richland County
                                  Court of Common Pleas, Case No.
                                  2012-CR-485



JUDGMENT:                         Affirmed




DATE OF JUDGMENT:                 November 7, 2013




APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOHN C. NIEFT                             JEFFREY P. UHRICH
Assistant Prosecuting Attorney            P.O. Box 1977
38 South Park Street                      Westerville, OH 43086
Mansfield, OH 44902

*Baldwin, J.*

{¶1}    Appellant Franco Stephens appeals a judgment of the Richland County Common Pleas Court convicting him of receiving stolen property (R.C. 2913.51(A)), possession of heroin (R.C. 2925.11(A), (C)(6)(b)), possession of drugs (R.C. 2925.11(A), (C)(1)(b)), two counts of having a weapon under disability (R.C. 2923.13(A)(2), (3)), trafficking in heroin (R.C. 2925.03(A)(2), (C)(6)(c)) and aggravated trafficking in drugs (R.C. 2925.03(A)(2), (C)(1)(c)) with a forfeiture specification and a firearm specification.  Appellee is the State of Ohio.

## STATEMENT OF FACTS AND CASE

{¶2}    During the summer of 2012, Mansfield Police received complaints of possible drug activity out of a residence at 384 Greenlee Road in Mansfield.  Metrich, a multi-county drug enforcement task unit, was called in to investigate.

{¶3}    Ebony Fields was the leaseholder for the residence.  She was known to Detective Perry Wheeler, a Metrich officer, from previous drug cases.  Officers visited Ebony at the home to gather information.  Ebony told officers that appellant, who was her live-in boyfriend, sold heroin from her house and from a club in downtown Mansfield.

{¶4}    On July 19, 2012, Metrich officers Wheeler, Trooper Jacob Tidaback, and Detective Steve Blust went to 384 Greenlee Road to perform a "knock and talk."  Although dressed in civilian clothes, the officers had their badges and guns visible.

{¶5}    Ebony met the officers at the door.  She and Dennis Walker, a friend who had been released from jail and was looking for a ride to Cleveland, went outside to

speak to the officers.   After the officers discussed the ongoing complaints of drug activity at the residence with Ebony, she invited the officers inside.

{¶6}   Upon entering the house, officers saw appellant kneeling on the floor by the television.  He was told to stand up.  Trooper Tidaback asked appellant if he could pat him down for safety, and appellant agreed.  Tpr. Tidaback felt something like a plastic bag in appellant's pocket.  He asked appellant what was in the packet and appellant responded that it was money.  Tpr. Tidaback asked if he could remove the packet and appellant consented.  The packet contained $135.00 and eight bindles of heroin.  Appellant was arrested and read his Miranda rights.  He was then placed in the back of the police cruiser.

{¶7}   After arresting appellant, Det. Blust reviewed a consent to search form with Ebony.  She signed the form, witnessed by the other two officers.

{¶8}   Ebony led Tpr. Tidaback and Det. Blust to the bedroom and told them appellant had a handgun hidden in a hole in the box spring of the bed.  Officers found the gun.  Det. Blust found eight more bindles of heroin, thirty pills of ecstasy packaged in ten-pill bags, and drug paraphernalia in the house.

{¶9}   Appellant was indicted with receiving stolen property (R.C. 2913.51(A)), possession of heroin (R.C. 2925.11(A), (C)(6)(b)), possession of drugs (R.C. 2925.11(A), (C)(1)(b)), two counts of having a weapon under disability (R.C. 2923.13(A)(2), (3)), trafficking in heroin (R.C. 2925.03(A)(2), (C)(6)(c)) and aggravated trafficking in drugs (R.C. 2925.03(A)(2), (C)(1)(c)) with a forfeiture specification and a firearm specification.

{¶10} Appellant moved to suppress the evidence found on his person and in the home and any statements he made concerning the gun. Following a suppression hearing, the court found that Ebony gave both oral and written consent to search the residence, and appellant consented to Tpr. Tidaback removing the packet of drugs from his pocket. The court further found that appellant was given Miranda warnings before he made any statements to police.

{¶11} After the trial court announced his findings on the suppression motion from the bench, appellant complained that everything was going against him. He expressed displeasure with the fact that he could not lower his bond and that the judge ruled against him on the suppression motion when the police did not have a warrant. He asked what happened to the attorney who represented him in municipal court. Counsel then moved to withdraw, arguing that appellant did not understand the charges. The court overruled the motion, stating that appellant understood the charges, but was not willing to believe the charges. Appellant continued to state that everything was going downhill and everyone was against him, including his girlfriend.

{¶12} On the morning of jury trial, appellant represented that he wanted to change his plea to guilty. After engaging in a colloquy with appellant, it became apparent that appellant wanted to enter a plea to a deal that was no longer on the table. When he became aware that he could be sentenced to up to ten years incarceration, he changed his mind and proceeded to trial.

{¶13} Appellant was convicted on all seven counts, the forfeiture specification, and the firearm specification. Several of the offenses were merged as allied offenses,

and he was sentenced to a term of incarceration of eight years and three months.  He assigns two errors on appeal:

{¶14} "I.     THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION TO SUPPRESS BASED UPON THE ILLEGAL SEARCH OF DEFENDANT-APPELLANT'S PERSON AND PROPERTY BY LAW ENFORCEMENT AS WELL AS THE ILLEGAL SEIZURE OF EVIDENCE FROM DEFFENDANT-APPELLANT BY LAW ENFORCEMENT.

{¶15} "II.     THE TRIAL COURT ABUSED ITS DISCRETION BY NOT PERMITTING DEFENDANT/APPELLANT TO OBTAIN NEW COUNSEL."

I.

{¶16}   Appellant argues that the court erred in overruling his motion to suppress because the search of his person and the residence was unconstitutional in the absence of a warrant.  He argues that Ebony's consent to search the residence was involuntary.  He argues that the police intimidated her to gain entrance to the house by telling her they suspected drug activity, and they advised her there may be ramifications as to her ability to keep the house and her children if she didn't cooperate and sign the consent form.

{¶17}   There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141(1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726(1993). Second,

an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (1993); *Guysinger, supra.* As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶18}   When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap,* 73 Ohio St.3d 308, 314, 1995–Ohio–243, 652 N.E.2d 988; *State v. Fanning* , 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

{¶19}   The question of whether consent to search was voluntary or the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances. *Schneckcloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The standard for measuring the scope of consent is objective reasonableness, i.e., what a reasonable person would have understood by the

exchange between the officer and the suspect. *Florida v. Jimeno*, 500 U.S.248, 251, 111 S.Ct. 1801, 114 L.E.2d 297 (1991).

{¶20}   The officers testified that Ebony gave them permission to enter the house. She admitted in her testimony at the suppression hearing that she allowed them to enter the house.  Supp. Tr. 85-86.  Although they were discussing drug activity with her at the time, the evidence does not support appellant's assertion that police used this information to pressure Ebony to allow them to enter the house.  In fact, officers had discussed these allegations with Ebony at an earlier date and she had provided them with information concerning appellant's drug activity at the house and a club in Mansfield.

{¶21}   Once inside the house, Tpr. Tidaback testified that appellant consented to a pat down.  He testified that he felt a plastic bag in appellant's front pocket.  When he asked appellant if he could remove the baggie, appellant consented.  The baggie contained eight bindles of heroin.

{¶22}   Ebony signed a consent form to allow police to search the residence after appellant was arrested based on the heroin found in his pocket.  She testified that she felt threatened because she could lose custody of her child based on drug activity in the home.  However, the officers each testified that she was not threatened or promised anything to induce her to sign the form.  Supp. Tr. 14, 39, 60.

{¶23}   The trial court did not err in overruling appellant's motion to suppress based on the testimony of the officers that consent was provided for both the search of appellant's person and the residence.  The first assignment of error is overruled.

II.

{¶24}   Appellant argues that the court erred in overruling his motion for a new attorney.

{¶25}   In the context of reviewing a claim by a defendant that the trial court abused its discretion by overruling the defendant's request to discharge court-appointed counsel and to substitute new counsel, courts have taken the approach that the defendant must show a complete breakdown in communication in order to warrant a reversal of the trial court's decision. *Swogger*, supra, 2011–Ohio–5607 at ¶ 13. Hostility, tension, or personal conflicts between an attorney and a client that do not interfere with the preparation or presentation of a competent defense are insufficient to justify a change in appointed counsel. See *State v. Henness*, 79 Ohio St.3d 53, 65–66, 679 N.E.2d 686 (1997). Furthermore, "[m]erely because appointed counsel's trial tactics or approach may vary from that which appellant views as prudent is not sufficient to warrant the substitution of counsel." *State v. Glasure*, 132 Ohio App.3d 227, 239, 724 N.E.2d 1165 (1999); *State v. Evans*, 153 Ohio App.3d 226, 2003–Ohio–3475, 792 N.E.2d 757, ¶ 31; *State v. Newland*, 4th Dist. Ross No. 02CA2666, 2003–Ohio–3230 at ¶ 11.

{¶26}   After the court issued a ruling from the bench overruling his motion to suppress, appellant expressed his displeasure with the ruling, with the charges against him, with the amount of time he had spent in prison awaiting trial.  He expressed his feeling that everything was going against him.  He then expressed displeasure with his attorney:

{¶27}   "THE DEFENDANT:  Your Honor, what happened to the attorney I had that was originally on my paperwork, Rolf Whitney?  Why he get thrown off my case?

{¶28}   "THE COURT:  He wasn't on your case in this case.  He was on your case in municipal court.

{¶29}   "THE DEFENDANT:  I signed a paper, that was at the preliminary hearing with him.

{¶30}   "THE COURT:  That was in municipal court.  When you come over here you have an arraignment on the felony charges and you have an attorney appointed at that time.

{¶31}   "THE DEFENDANT:  I had an attorney.

{¶32}   "THE COURT:  No, you didn't.

{¶33}   "THE DEFENDANT:  It was Rolf Whitney on my paperwork.  I got it right here."

{¶34}   Supp. Tr. 112.

{¶35}   "THE DEFENDANT:  Your Honor, I'm saying I'm not getting the right representation from my counsel.

{¶36}   "THE COURT:  What is wrong with your representation?

{¶37}   "THE DEFENDANT:  Everything is like going bad for me.  I don't understand this.  I don't understand this at all.

{¶38}   "THE COURT:  What is going bad for you?

{¶39}   "THE DEFENDANT:  It seem like everything against me, everything - -

{¶40}   "THE COURT:  You didn't get your bond lowered, you lost on suppression hearing, right?

{¶41} "THE DEFENDANT: Everything. I guess, if you count me out, it's over with.

{¶42} "THE COURT: No.

{¶43} "THE DEFENDANT: I lost it, you saying I, I lost it. I don't know how – what's going on.

{¶44} "THE COURT: You lost what?

{¶45} "THE DEFENDANT: You say on my suppression hearing I lost it. I don't know why I am losing."

{¶46} Supp. Tr. 113.

{¶47} The record does not demonstrate a breakdown in the attorney-client relationship such that appointment of new counsel was necessary. Appellant pointed to no specific problems with his attorney other than the fact that he lost his suppression motion and failed to get his bond lowered. Appellant's dissatisfaction was not with counsel or anything specific that counsel did or did not do, but rather with the fact that he lost several motions on the merits.

{¶48} The second assignment of error is overruled.

{¶49}   The judgment of the Richland County Common Pleas Court is affirmed.

Costs are assessed to appellant.


By: Baldwin, J.

Gwin, P.J. and

Wise, J. concur.


_____
HON. CRAIG R. BALDWIN


_____
HON. W. SCOTT GWIN


_____
HON. JOHN W. WISE


CRB/rad

[Cite as *State v. Stephens*, 2013-Ohio-5008.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff - Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| FRANCO STEPHENS | : | |
| | : | |
| Defendant - Appellant | : | CASE NO. 12CA120 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio is affirmed. Costs assessed to appellant.


_____
HON. CRAIG R. BALDWIN


_____
HON. W. SCOTT GWIN


_____
HON. JOHN W. WISE